2018 BNH 009
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 18-10552-BAH
                                                          Chapter 13
Darlene Marie Vertullo,
      Debtor

*Darlene Marie Vertullo*       *Joshua Ryan-Polczinski, Esq.*
*Pro Se*      *Harmon Law Office, P.C.*
     *Attorney for U.S. Bank National Association, as*
*Leonard G. Deming, II, Esq.*      *Trustee for Credit Suisse First Boston Mortgage*
*Attorney for Deming Law Office*      *Securities Corp., CSFB Mortgage Pass-Through*
     *Certificates, Series 2005-8*

## MEMORANDUM OPINION

**I. INTRODUCTION**

Currently before the Court are the Debtor's amended chapter 13 plan dated May 31, 2018 (Doc. No. 68) (the "Chapter 13 Plan") and a motion for relief from stay filed by U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage Pass-Through Certificates, Series 2005-8 ("U.S. Bank") (Doc. No. 30) (the "Motion for Relief").  Both the Chapter 13 Plan and the Motion for Relief raise the same legal issue: whether the Debtor has a sufficient property interest in real property, located at 2 Grace Drive, Nashua, New Hampshire (the "Property"), that she may cure defaults under a mortgage that encumbers the Property and which U.S. Bank holds.  For the reasons set forth below, the Court finds that the Debtor does have a sufficient interest in the Property and so will deny the Motion for Relief and schedule a continued confirmation hearing on the Chapter 13 Plan.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

### A.  Practical and Procedural Background

The facts are straightforward and wholly undisputed. U.S. Bank is the holder of a mortgage, originally given by the Debtor and James E. Underwood to SLM Financial Corp. U.S. Bank, after notice, completed a foreclosure auction of the Property to a third-party buyer on January 11, 2017. To date, no deed has been recorded to evidence this transaction in the public record. The Debtor filed a chapter 13 petition on May 9, 2017 (the "Prior Chapter 13 Case"). The Court dismissed the Prior Chapter 13 Case on March 29, 2018, after the Debtor failed to make plan payments.[1]

The Debtor filed the current chapter 13 case on April 26, 2018 (the "Current Chapter 13 Case"). At the time of the filing of the Current Chapter 13 Case, U.S. Bank had still yet to record the foreclosure deed. U.S. Bank promptly sought relief from the automatic stay of 11 U.S.C. § 362(a), seeking relief to evict the Debtor from the Property, arguing that the Debtor had nothing more than a bare possessory interest in the Property.[2] Thereafter, the Debtor filed the Chapter 13 Plan, which seeks to cure prepetition defaults in the mortgage to U.S. Bank and maintain payments during the Current Chapter 13 Case.

The Court held a joint hearing on the Chapter 13 Plan and the Motion for Relief on August 3, 2018. In addition to the Debtor (who is not represented by an attorney), counsel for

---

[1] At the time of this dismissal, the Court had an essentially identical legal issue under advisement as the issue it addresses in this opinion.
[2] Hereinafter, "§," "section," and "Bankruptcy Code" will refer to title 11 of the United States Code, unless otherwise indicated.

U.S. Bank, the chapter 13 trustee, and Attorney Leonard Deming, who had been the Debtor's bankruptcy counsel in the Prior Chapter 13 Case and is apparently a creditor in the Current Chapter 13 Case ("Creditor Deming"), appeared at the hearing. Creditor Deming argued in opposition to the Motion for Relief and in favor of the confirmation of the Chapter 13 Plan. The Court noted, with the agreement of the parties, that it would take judicial notice of the relevant filings in the Prior Chapter 13 Case to the extent that it found them helpful in coming to a decision in this matter. The Court afforded U.S. Bank an opportunity to respond to Creditor Deming's last-minute brief, which it did, and then took the matter under advisement.

B. <u>Arguments of the Parties</u>

The parties' arguments are straightforward. The Debtor argues that because U.S. Bank has failed to complete the foreclosure sale by recording a deed, she may still cure defaults under the mortgage and maintain payments to U.S. Bank in the Chapter 13 Plan. U.S. Bank argues that because it concluded the auction of the Property prepetition, the Debtor was divested of all legal and equitable interest, and the Property did not become property of the bankruptcy estate, making it impossible to effect a cure of the mortgage in the Chapter 13 Plan.

Finally, Creditor Deming argues that, by virtue of § 544(a)(3), which he asserts places the chapter 13 trustee in the position of a bona fide purchaser for value, the chapter 13 trustee has an interest in the Property that is senior to any interest that the third-party purchaser at the foreclosure would obtain by U.S. Bank's recording of the foreclosure deed postpetition.

**III. DISCUSSION**

    A.  <u>Legal Context</u>

The Court recently summarized the legal scaffolding necessary to decide this issue in <u>Cornell v. Envoy Mortg., Ltd. (In re Hosch)</u>, 551 B.R. 696, 698-700 (Bankr. D.N.H. 2016), <u>aff'd sub nom.</u> <u>Gordon v. Envoy Mortg., Ltd.</u>, 569 B.R. 1 (D.N.H. 2017):

> Under New Hampshire law, a mortgagee foreclosing under a power of sale provision in a mortgage "shall within 60 days of the sale" record in the appropriate registry of deeds "the foreclosure deed, a copy of the notice of the sale, and his affidavit setting forth fully and particularly his acts in the premises." N.H. RSA § 479:26, I. The statute further provides that:
>
> If such recording is prevented by order or stay of any court or law or any provision of the United States Bankruptcy Code, the time for such recording shall be extended until 10 days after the expiration or removal of such order or stay.
>
> <u>Id.</u> Upon recording, "title to the premises shall pass to the purchaser free and clear of all interests and encumbrances which do not have priority over such mortgage." N.H. RSA § 479:26, III. If, however, the mortgagee fails to record the foreclosure deed and affidavit within 60 days of the foreclosure sale, the sale is rendered "void and of no effect only as to liens or other encumbrances of record with the register of deeds for said county intervening between the day of the sale and the time of recording of said deed and affidavit." N.H. RSA § 479:26, II. Thus, the 60 day period and any extension thereof operates as a safe harbor for the mortgagee against intervening liens.
>
> In <u>In re Hazleton</u>, 137 B.R. 560 (Bankr. D.N.H. 1992), Judge Yacos held that it was unnecessary to obtain relief from stay to record a foreclosure deed after a prepetition foreclosure sale. He reasoned that because a mortgagor-debtor's statutory right of redemption expires once the foreclosure auction is concluded, <u>see</u> N.H. RSA § 479:18, the debtor lacks any state or federal interest in the real property on the petition date, and therefore, the foreclosed property is not property of the estate protected by the automatic stay. <u>In re Hazleton</u>, 137 B.R. at 562. The New Hampshire Supreme Court has since cited <u>Hazelton</u> for the proposition that a mortgagor does not retain any legal or equitable interest in property once a foreclosure auction is held. <u>Barrows v. Boles</u>, 141 N.H. 382, 393 (1996).
>
> In <u>In re Beeman</u>, 235 B.R. 519, 526 (Bankr. D.N.H. 1999), however, Judge Deasy held the subsequent enactment of 11 U.S.C. § 1322(c)(1) abrogated <u>Hazelton</u> as it applied to Chapter 13 cases. That section provides in relevant part:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured . . . until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

11 U.S.C. § 1322(c)(1). Judge Deasy concluded that the plain language of 11 U.S.C. § 1322(b) and (c) provide an independent federal right to cure which preempts state law "with respect to when a Chapter 13 debtor's rights to cure and reinstate a principal residence mortgage are cut off." In re Beeman, 235 B.R. at 524. Focusing on the word "sold," he determined that this federal interest under 11 U.S.C. § 1322(c)(1) exists until the completion of the foreclosure process, including the recording of the foreclosure deed:

> By stating that a debtor's rights are cut off when a residence is *sold* at a foreclosure sale, the language envisions the completion of something; namely, the completion of a "sale" of property through foreclosure. The word "sale" is generally defined as the transferring of ownership and title regarding property to a buyer. Thus, the statutory language envisions a debtor's rights being terminated upon the completed transfer of title and ownership to a buyer through a foreclosure sale. Title and ownership generally pass through foreclosure upon the completion of a *process*, and not upon the occurrence of a single event such as a foreclosure auction. For example, under New Hampshire's power of sale regime, there are numerous steps that must be taken before a foreclosure sale is deemed complete and final.

Id. at 525 (emphasis in original, internal citations omitted). Accordingly, Beeman stands for the proposition that a mortgagee must obtain relief from stay in a Chapter 13 case to record a foreclosure deed despite the conclusion of a prepetition foreclosure auction. Id. at 526-27. Outside the Chapter 13 context, the applicability of Hazelton is unquestioned. Id. at 526 n.7; see also In re Lakes Region Donuts, LLC, No. BR 13-11823-BAH, 2014 WL 1281507, at *10 (Bankr. D.N.H. Mar. 27, 2014) (refusing to extend the rationale of Beeman to a Chapter 11 case).

In TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589 (B.A.P. 1st Cir. 2014), the United States Bankruptcy Appellate Panel for the First Circuit criticized Beeman while reversing a decision of this court that followed Beeman's rationale. The Panel rejected Beeman's interpretation of 11 U.S.C. § 1322(c)(1), concluding:

> "The phrase 'sold *at* a foreclosure sale' refers to a sale that occurs at a foreclosure auction." The additional phrase "conducted in accordance with applicable nonbankruptcy law" is a requirement that the foreclosure was noticed, convened and held in compliance with applicable state laws. "To define the word 'sold' as the point at which a deed is transferred to

5

> the prevailing bidder subsequent to the date of the auction likewise removes the words 'foreclosure sale' from the statute."

In re LaPointe, 505 B.R. at 597 (emphasis in original, internal citations omitted). The Panel determined that "even though legal title does not pass to the purchaser until the deed has been recorded," "under New Hampshire law, the foreclosure process is complete *as to the mortgagor* at the time the gavel falls at the foreclosure auction." Id. (emphasis in original). Therefore, "a mortgagor does not have a right of redemption after the gavel has fallen and the memorandum of sale is signed," and, in the absence of a legal or equitable interest, the property is not property of the estate or subject to the automatic stay. Id. Notwithstanding the apparent inapplicability of the automatic stay, the Panel then remanded the matter "to the bankruptcy court for entry of an order granting the Bank's motion for relief from the automatic stay." Id. at 598.

Id.

B. Legal Application

Since 1999 and until the LaPointe decision, this Court followed Judge Deasy's Beeman decision in cases where a debtor filed a chapter 13 case before a foreclosing mortgagee was able to record a foreclosure deed. After the release of the LaPointe decision, parties in this district have been uncertain as to how to proceed. In this opinion, the Court seeks to resolve that uncertainty to the extent possible. After careful review of the Beeman and LaPointe decisions, the Court has serious concerns with the legal reasoning of LaPointe and believes that the Beeman decision should still be followed.

First, the Court will address what appears to be a factual error in LaPointe's legal reasoning. In LaPointe, the panel discussed two different approaches that bankruptcy courts have taken to the interpretation of § 1322(c)(1), noting:

> [s]ince the enactment of § 1322(c)(1), courts have disagreed over the meaning of the phrase "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," and several different approaches have emerged. One line of cases follows the "gavel rule," holding that the debtor's right to cure is cut off once the gavel falls at the foreclosure auction. These courts generally agree that § 1322(c)(1) is clear and unambiguous, and that the term "foreclosure sale" describes "a single, discrete event, and not merely a step in a process culminating in the recordation and delivery of a deed." In re Medaglia, 402 B.R.

6

>   530, 533 (Bankr. D.R.I. 2009) . . . . Courts adopting a second approach consider the statutory language to be ambiguous and turn to the legislative history to determine the legislature's intent. . . . The U.S. Bankruptcy Court for the District of New Hampshire adopted this approach in In re Beeman . . . .

LaPointe, 505 B.R. at 595-96.

While the panel correctly noted that Beeman found a foreclosure sale to be "part of a process culminating in the delivery and recordation of the deed, with the debtor's right to cure surviving until title to the property passes to the purchaser under the relevant state law," it was incorrect to conclude that Beeman "adopted this [second] approach," which the panel defined as an approach that considers "the statutory language to be ambiguous." Id. It is unambiguously clear that Beeman did not find the language of § 1322(c)(1) to be ambiguous:

>   The Court finds that the language of § 1322(c) is unambiguous. Section 1322(c)'s language unambiguously provides that (1) state redemption law is preempted with respect to when a Chapter 13 debtor's rights to cure and reinstate a principal residence mortgage are cut off; (2) such cure and reinstatement rights end when a foreclosure sale process is complete; and (3) state foreclosure law determines when the foreclosure sale process ends.

Beeman, 235 B.R at 524. The LaPointe panel's apparent misreading of Beeman fogs the rest of its legal analysis, substantially diminishing the clarity and persuasive value of the decision. See LaPointe, 505 B.R. at 569 (The first sentence of the analysis section of the opinion begins: "As Judge Haines pointed out in McKinney: '[T]he major fork in § 1322(c)(1) interpretation is the ambiguous/unambiguous determination.") (quoting JPMorgan Chase Bank v. McKinney (In re McKinney), 344 B.R. 1, 5 (Bankr. D. Me. 2006)).

In addition to the apparent misreading of Beeman's text, the Court finds the LaPointe decision's legal reasoning to be problematic. LaPointe concludes that "foreclosure sale" really means "foreclosure auction" and that the last phrase of § 1322(c)(1), "conducted in accordance with applicable nonbankruptcy law," means only that the "auction" complied with that state law. Id. In coming to this conclusion, the LaPointe panel seems to make the very same error it found

in Beeman.  It has effectively read the phrase "foreclosure sale" out of the statute and substituted it with "foreclosure auction."  This substitution necessarily narrows the scope of the sentence, as "auction" is a more specific term than "sale."  See Beeman, 235 B.R. at 525 ("Thus, the statutory language envisions a debtor's rights being terminated upon the completed transfer of title and ownership to a buyer through a foreclosure sale.  Title and ownership generally pass through foreclosure upon the completion of a process, and not upon the occurrence of a single event such as a foreclosure auction.").  The Court finds the meaning of § 1322(c)(1) clear without any paraphrasing or glossing of terms.

  LaPointe also seems to err when it concludes that the "sold at a foreclosure sale" text of § 1322(c)(1) should be limited to when the "foreclosure process is complete as to the mortgagor."  This reading of the statute effectively adds a limitation into the text that does not exist.  In terms of state law, this addition is significant.  For example, under New Hampshire law, the sale process can be complete as to a mortgagor without being complete as to third parties.  See Cornell v. Envoy, 551 B.R. at 705 ("As explained above, failure to record the foreclosure deed and affidavit within the safe harbor renders the sale 'void and of no effect only as to liens or other encumbrances of record . . . between the day of the sale and the time of recording of said deed and affidavit.'  N.H. RSA § 479:26, II.").

  The plain language of § 1322(c)(1) focuses on the sale of the debtor's residence, and not upon the debtor's rights in the residence.  The operative moment when a debtor can no longer cure a default in a mortgage secured by the debtor's residence under § 1322(c)(1) is the sale of the debtor's residence itself—the trigger point being when "such residence is sold"—not just when the foreclosure sale process is complete only as to the mortgagor.  If Congress had intended to set a trigger point sooner than the point at which the residence is sold as to all parties in interest (including the holders of intervening liens or encumbrances), it could have done so.

The Court finds that <u>Beeman</u>'s interpretation of the statute is most faithful to the plain meaning of the language. In <u>Beeman</u>, Judge Deasy read the entirety of § 1322(c)(1) as a whole, without adding or subtracting language, and considered the overall purpose of the section. See <u>Dolan v. U.S. Postal Service</u>, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). The Court finds <u>Beeman</u> to be more persuasive and better supported than the rationale described in <u>LaPointe</u>. Thus, in the absence of a mandate or controlling legal authority, the Court will continue to follow <u>Beeman</u> under the circumstances of this case.

Having determined that <u>Beeman</u> is the correct approach, the Court finds that the Debtor may still attempt to cure her mortgage with U.S. Bank, pursuant to § 1322(c)(1), because, as of the petition date of the Current Chapter 13 Case, U.S. Bank had not completed the foreclosure sale by recording the foreclosure deed.

Finally, the Court will briefly address the argument raised by Creditor Deming. Section 544(a)(3) provides that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

§ 544(a)(3). Neither the Chapter 13 Plan nor the chapter 13 trustee currently advances any claims against either U.S. Bank or the third-party purchaser at the foreclosure auction. Accordingly, the Court finds no purpose in discussing hypothetical, unasserted avoidance rights of the chapter 13 trustee. It is unclear to the Court how such rights impact the issue at stake, i.e.,

9

whether the Debtor can cure the U.S. Bank mortgage.  And, because the Court has already decided the legal question before it, it does not need to reach this argument.

### IV.  CONCLUSION

For the reasons set forth above, the Court finds that the Debtor may include a cure and maintain provision pursuant to § 1322(c)(1) as to U.S. Bank's mortgage in her Chapter 13 Plan.  Because the Motion for Relief is premised solely on the argument that the Debtor has no cure rights, it must be denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue separate orders consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date:   October 1, 2018                    /s/ Bruce A. Harwood
                                           Bruce A. Harwood
                                           Chief Bankruptcy Judge